UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMANDA M. DUSIK,<br><br>   Plaintiff,<br><br> v.<br><br>LUTHERAN CHILD & FAMILY SERVICES OF ILLINOIS,<br><br>   Defendant. | No. 16 CV 10812<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amanda Dusik worked for defendant, Lutheran Child & Family Services of Illinois when she learned she had a torn ACL and meniscus in her right knee. Dusik underwent knee surgery and took leave from work to recover. After Dusik had been on leave for several months, LCFS terminated her. Dusik brings this action against LCFS under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*, and the Family Medical Leave Act, 29 U.S.C. 2601 *et seq.*, for discriminating against her on the basis of her disability. LCFS moves to dismiss Dusik's complaint; its motion is denied.

**I. Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A 12(b)(6) motion tests the sufficiency of the complaint; it does not to decide the merits. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). Courts must construe all factual

allegations as true and draw all reasonable inferences in the plaintiff's favor in considering 12(b)(6) motions, but courts need not accept legal conclusions or conclusory allegations. *Iqbal,* 556 U.S. at 680–82.

## II. Background

Dusik worked for LCFS for over five years, until LCFS terminated her on July 15, 2015. [12] at ¶¶ 7, 21.[1] During that time, she met the legitimate job performance expectations of LCFS. *Id.* at ¶ 11. In March 2015, Dusik learned she had a torn ACL and meniscus in her right knee that required surgery. *Id.* at ¶ 12. At the end of March, Dusik told LCFS that her doctor advised her to take three to six months of leave due to her injury and to recover from surgery. *Id.* at ¶ 14. She requested to be updated by a manager about her hours and how much leave she had left. *Id.* at ¶ 15. LCFS advised Dusik that her leave was being designated as FMLA leave beginning on March 31, 2015. *Id.* at ¶ 16.

Dusik had surgery on April 6, 2015. *Id.* at ¶ 17. Immediately after her knee surgery, she could not "walk, kneel, crouch, stoop, bend, and was virtually immobile." *Id.* at ¶ 19. Two months later, Dusik told her immediate supervisor that she was progressing, she was doing physical therapy three times per week, and that her doctor had told her that she would need three to six months off of work. *Id.* at ¶ 18. During that call, Dusik's supervisor did not mention how much FMLA leave Dusik had remaining. *Id.* Despite Dusik's previous request, LCFS never informed her about the amount of leave that would be counted against her FMLA leave

---

[1] Bracketed numbers refer to entries on the district court docket.

2

entitlement, the amount of leave she had remaining, or that she would be terminated if she did not return to work by a certain date. *Id.* at ¶ 20.

On July 15, 2015, LCFS terminated Dusik because she had exhausted her FMLA leave. *Id.* at ¶ 21. Dusik says the termination was without notice or warning. *Id.* At that time, Dusik was still going to physical therapy, activity still agitated her knee, and she could not walk more than approximately ten feet. *Id.* at ¶ 22. Dusik believes, however, that she could have performed the essential functions of her job with the help of a knee brace. *Id.* at ¶ 23. Dusik says: "[h]ad [she] been notified that her FMLA leave was exhausted or had [LCFS] engaged her in an interactive process, she could have been provided with [a] reasonable ADA accommodation in the form of extended leave or that she return to work with a knee brace." *Id.* at ¶ 25. Accordingly, Dusik argues that LCFS did not fulfill its duty to act reasonably and in good faith. *Id.* at ¶ 27.

Dusik says she is a qualified individual with a disability under the ADA, *id.* at ¶ 29; and that she requested medical leave as her accommodation, *id.* at ¶ 32, but that LCFS denied her request without justification and it failed to engage in an interactive process to determine if any alternative accommodation could be provided, *id.* at ¶ 33.[2] Since LCFS's handbook states that, "[e]mployees, who are not eligible under the FMLA, may be granted an unpaid leave of absence of up to 6 months to attend to personal matters," and since LCFS has provided six months of

---

[2] Dusik was an "employee" under the ADA and the FMLA. 42 U.S.C. § 12111(4); 29 U.S.C. § 2611(2). LCFS, a not-for-profit corporation, was an "employer" under the ADA and the FMLA. [12] at ¶ 5; 42 U.S.C. § 12111(5); 29 U.S.C. § 2611(4). Dusik filed a charge against LCFS with the EEOC and she received a Right to Sue letter in response. [12] at ¶ 10.

unpaid leave to other similarly situated employees in the past, providing six months of unpaid leave for Dusik (in accordance with her doctor's recommendation) would not have been unduly burdensome for LCFS. *Id.* at ¶¶ 18, 26, 34.

Dusik also says that her leave from work was protected under the FMLA. *Id.* at ¶ 40. LCFS's failure to notify Dusik of the amount of leave that would be counted against her FMLA leave entitlement interfered with her FMLA rights, and LCFS retaliated against Dusik by not providing her with written notice of the amount of leave remaining before it terminated her. *Id.* at ¶¶ 41–42.

### III. Analysis

#### A. ADA Claim

To state a failure to accommodate claim under the ADA, Dusik must show: (1) she is a qualified individual with a disability, (2) LCFS was aware of her disability, and (3) LCFS failed to reasonably accommodate her disability. *Winsley v. Cook Cty.*, 563 F.3d 598, 603 (7th Cir. 2009). The parties dispute the first and third elements.

The 2008 amendments to the ADA broadened the definition of "disability" to include "transitory and minor" impairments, which are defined as lasting for six months or less, so long as they substantially limit a major life activity. *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172–73 (7th Cir. 2013) (citing 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.2(j)(1)(ix); 42 U.S.C. § 12102(4)(D)). A "major life activity" includes walking, standing, lifting, bending, and working. 42 U.S.C. § 12102(2)(A). LCFS argues that intermittent and episodic impairments do not constitute a disability, pointing to the oft-cited principle that a broken leg is not a

disability under the ADA. *See, e.g.*, *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 543–44 (7th Cir. 1995). Since Dusik's torn ACL and meniscus is not a chronic impairment, a manifestation of a disability, or part of an underlying disability, LCFS argues, it does not amount to a disability under the ADA. *See, e.g., id.* at 544. Dusik's physical impairment may be "transitory or minor," because her doctor recommended a recovery period of three to six months, but the complaint also plausibly alleges that the physical impairment substantially limited her ability to perform major life activities—Dusik says that the torn ACL and meniscus prevented her from walking, kneeling, crouching, stooping, and bending. This is sufficient to allege a disability under the 2008 Amendments.

LCFS argues that an employee who only proposes not working for an extended time as a reasonable accommodation is not a qualified individual under the ADA. *See, e.g., Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Not working is not a means to perform the job's essential functions. An inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability."). Dusik, however, alleges that she was a qualified individual because she could have performed the essential functions of her job with a knee brace. The complaint, therefore, does not allege an inability or unwillingness to work.

LCFS finds fault in Dusik's failure to communicate her ability to work with a knee brace. The ADA requires just the opposite, though. Once LCFS was aware of Dusik's disability, it was obligated to "engage with [her] in an 'interactive process'

to determine the appropriate accommodation under the circumstances." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061–62 (7th Cir. 2014) (citations omitted); *see also* 29 C.F.R. § 1630.2(o)(3).[3] "[W]hile an employer's failure to engage in the interactive process alone is not an independent basis for liability, it is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling*, 739 F.2d at 1062 (citing *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)). It is plausible to infer that LCFS's few phone calls with Dusik did not amount to an interactive process and that as a result, LCFS failed to uncover a reasonable accommodation option of a knee brace.

Based on Dusik's plausible allegations that she is a qualified individual with a disability and LCFS's failure to reasonably accommodate her, the motion to dismiss the ADA claim is denied.

**B.     FMLA Claims**

The "FMLA entitles an employee to twelve weeks of leave every twelve-month period if she is afflicted with a 'serious health condition' which renders her unable to perform her job." *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009), (quoting 29 U.S.C. § 2612(a)(1)(D)). It is unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights or to retaliate against an employee who exercises FMLA rights. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing 29 U.S.C. § 2615 (a)–(b)).

---

[3] LCFS disputes that Dusik's torn ACL and meniscus was a disability under the ADA, but it does not dispute that it was aware of her injury, resulting surgery, and recovery time.

6

Employers must notify an employee of the amount of leave counted against the employee's FMLA leave entitlement. 29 C.F.R. § 825.300. When the employer is designating the employee's leave as FMLA-qualifying and the amount of time the employee needs for leave is known, "the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice." *Id.* If, however, the amount of leave the employee needs is unknown at that time, "then the employer must provide notice of the amount of leave counted against the employee's FMLA leave entitlement upon the request by the employee, but no more often than once in a 30–day period and only if leave was taken in that period." *Id.* When Dusik requested three to six months off of work to recover from surgery, LCFS told her that her leave was being designated as FMLA leave beginning on March 31, 2015. After that communication, LCFS never notified Dusik that she was close to exhausting or already had exhausted her FMLA leave entitlement. These allegations, taken as true, describe a violation of the FMLA notice requirement. Yet, LCFS argues that the amount of leave Dusik requested was "unknown," and that Dusik never made any requests that triggered LCFS's notification duty. At this stage of the case, a range of three to six months of leave is not an "unknown" quantity. In any event, LCFS plausibly ran afoul of the FMLA notice requirement because Dusik requested that a manager update her about her FMLA leave entitlement and LCFS never provided Dusik with any notifications. Dusik has alleged sufficient facts to raise her right to relief above a speculative level on her FMLA interference claim.

For a retaliation claim under the FMLA, Dusik must show: (1) she was engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between (1) and (2). *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). LCFS argues that Dusik has not demonstrated that there was a causal link between her protected activity of taking FMLA leave and the adverse action of her termination. Furthermore, LCFS says, Dusik cannot make such a showing because LCFS only terminated her upon exhaustion of her FMLA leave.[4] Dusik responds that temporal proximity between the expiration of her leave and her termination, along with LCFS's retaliatory animus, which can be inferred from LCFS's refusal to keep her informed about her FMLA leave entitlement and its refusal to grant her an additional six months of leave per company policy when they had granted other similarly situated employees such leave, demonstrates a causal link. *See King v. Preferred Tech. Grp.*, 166 F.3d 887, 893 (7th Cir. 1999) ("Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity.") (citation omitted).

In its reply, LCFS argues that Dusik's termination was not "on the heels of" her FMLA leave because there was a nine week span between March 31, when Dusik was put on FMLA leave, and July 15, 2015, when she was terminated. LCFS also emphasizes that the company leave policy was discretionary and that Dusik did not allege that she requested such discretionary leave. Therefore, LCFS argues,

---

[4] LCFS notes that Dusik acknowledges that she received the full balance of her FMLA leave. *See* [12] at ¶¶ 16, 21.

8

there can be no inference of its retaliatory animus. LCFS explains that Dusik was "eventually terminated only when she unilaterally decided that she would not be returning to work, and only after the exhaustion of all her afforded leave and her failure to return to work or suggest any accommodation that would allow her to return."[5] [18] at 8. Drawing inferences in Dusik's favor, she was terminated just as she approached the end of her FMLA leave and her employer did not offer her the flexibility it offered other employees. Indeed, LCFS was suspiciously non-communicative. The timing and other circumstances that Dusik sets forth in the complaint are sufficient to show that there is a causal connection between her protected activity and LCFS's adverse employment action. Thus, Dusik has alleged a plausible FMLA retaliation claim, and LCFS's motion to dismiss Count II of the Second Amended Complaint is denied.

IV.   **Conclusion**

Defendant's motion to dismiss the second amended complaint, [14], is denied.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: 4/24/2017

---

[5] LCFS relies on case law and regulations that stand for the proposition that an employee's right to reinstatement is not absolute. *See* [14] at 10–11. Specifically, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness [. . .] the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c). This is a fair point, but for now, it is reasonable and appropriate to infer that Dusik was able to perform her job.

9